UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| KEXUE HUANG, | ) C/A No.: 4:16-1269-BHH-TER |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) Report and Recommendation |
| A. MAHSUKHANI, WARDEN, | ) |
| | ) |
| Respondent. | ) |
| | ) |

The *pro se* Petitioner filed a petition for writ of habeas corpus on April 25, 2016, pursuant to 28 U.S.C. § 2241[1]. Respondent filed a Motion to Dismiss or, in the alternative, a motion for summary judgment along with a memorandum and exhibits in support. As matters outside of the pleadings have been presented for consideration, the court will consider the motion under the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure. An order was filed July 28, 2016, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #12). Petitioner filed a response on July 28, 2016.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## **DISCUSSION**

### **A.  STANDARD FOR SUMMARY JUDGMENT**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact

finder could reasonably find for it.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  <u>Barber v. Hosp. Corp. of Am.</u>, 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." <u>Id.</u> at 322; <u>see also</u> <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B.  ARGUMENT OF PARTIES/ANALYSIS

### Factual and Procedural Background

Petitioner is currently incarcerated at the Federal Correctional Institution (FCI) in

Estill, South Carolina. At all times relevant to the allegations in the petition, Petitioner was incarcerated at the McRae Correctional Facility (MCF) in McRae, Georgia. Petitioner was incarcerated at MCF from February 23, 2013, until January 29, 2015. Petitioner filed the petition challenging an administrative disciplinary action he received while incarcerated at MCF for possession of a hazardous tool (a cellphone) in violation of Inmate Disciplinary Code 108 for which he received sanctions including the disallowance of forty-one days loss of Good Conduct Time, thirty days of disciplinary segregation, sixty days loss of phone privileges, and sixty days loss of commissary privileges.

Petitioner brings this action alleging a failure to receive his Administrative Detention Order (ADO) within twenty-four hours and a failure to receive a copy of the Discipline Hearing Officer's (DHO) report within fifteen (15) working days in violation of BOP regulations. As a result of the delay in receiving the DHO order, Petitioner alleges that his transfer to holdover status at the USP Atlanta was delayed thereby delaying his final transfer to the BOP at FCI Estill. Petitioner asserts that he filed Remedy #807657-A1 with the BOP Central Office on April 7, 2015, that the BOP sent him an "extension of time" notice on June 6, 2015, and that the BOP has still not responded to his administrative remedy. Petitioner requests that the BOP return his forty-one days Good Conduct Time (GCT).

Respondent concedes that this court has jurisdiction over Petitioner's challenge to a disciplinary action wherein GCT was taken as a sanction because such a sanction impacts the duration of his sentence. Respondent also stipulates that Petitioner exhausted the Administrative Remedy Process by appealing the DHO's decision that he committed a

4

violation of Code 108, Possession of a Hazardous Tool.[2]

Respondent submitted several exhibits in support of the motion for summary judgment, including but not limited to the following: copy of the corrected incident report (Exhibit #4); notice of the Discipline Hearing before the Discipline Hearing Officer (DHO) that was delivered to Petitioner (Exhibit #6); a copy of the Inmates Rights at Discipline Hearing (Exhibit #7); and, a copy of the DHO decision (Exhibit #8). Additionally, in support of the motion for summary judgment, Respondent attached the declaration of A. Kirley (Kirley) who declares that she is currently employed by the MCF in McRae, Georgia, Corrections Corporation of America (CCA), as a Discipline Hearing Officer (DHO). (Doc. # 11-5). CCA is a contract facility for inmates committed to the BOP. (Id.). As part of DHO duties, she conducts disciplinary hearings for inmates charged with violating BOP rules and policies and serves as an impartial decision maker of disciplinary matters referred to her for review. (Id.). When an inmate is charged with a violation of the federal prison rules, the staff member who becomes aware of the violations prepares an Incident Report. (Id.). The Incident Report identifies the inmate and describes the behavior that violated a prison rule. (Id.). The rule at issue is identified by code number and by a description. (Id.). A copy of the Incident Report is delivered to the inmate ordinarily within 24 hours of the time the Incident

---

[2] Respondent contends that a review of the BOP Administrative Remedy database reveals "that the BOP Central Office has not responded to Remedy #807657-A1 due to a backlog of inmate appeals. " Therefore, Respondent asserts that Petitioner could properly consider the remedy denied after the due date of June 2, 2015, and appeal to the next level by filing this petition. (Doc. #11, p. 4).

5

Report is written. (Id.). An investigation is conducted by a staff member, usually a lieutenant, who delivers the Incident Report to the inmate. (Id.). The inmate is advised of his rights and offered the opportunity to make a statement and identify witnesses. (Id.). At the conclusion of the investigation, the Lieutenant will determine whether there is sufficient reason to continue the proceedings. (Id.). If so, the matter is forwarded to the Unit Discipline Committee (UDC). The UDC will ordinarily consist of two or more staff, but only one unit staff is required if the Incident Report is to be referred to the DHO. (Id.). The UDC will conduct a hearing in which the inmate has the right to make a statement and present documentary evidence. (Id.). Depending on the level of the charges, the UDC can resolve the matter or refer the matter to the DHO. (Id.).

     Kirkley is familiar with the allegations in Huang's petition. Id. Even though Kirkley did not conduct Petitioner's DHO hearing, she has reviewed the documents relating to the Incident Report #2623603, the UDC hearing, and DHO hearing on Petitioner's Inmate Disciplinary Code 108 violation. (Id.). On August 31, 2014, Petitioner was cited with Incident Report #2623603 for a violation of Inmate Discipline Code 108, Possession of a Hazardous Tool. (Id.). On the same day, MCF referred the Incident Report to the FBI for a review of possible criminal prosecution. (Id.). On October 7, 2014, the FBI declined prosecution of the code violation and released the Incident Report back to MCF for disciplinary action. (Id.). MCF referred the Code 108 violation for an investigation by a lieutenant. (Id.). Lt. Sammons conducted an interview with Petitioner and advised him of his right to remain silent at all stages of the disciplinary process. (Id.). Petitioner refused to make

6

a statement during the investigation. (Id.). However, Lt. Sammons found sufficient evidence to support the charge of Code 108 violation against Petitioner and referred the Incident Report to the UDC. (Id.). Petitioner remained in the SHU pending the UDC hearing. (Id.). On October 14, 2014, the UDC conducted a hearing on Code 108 violation (Id.). Petitioner was advised of his right to remain silent during the hearing but chose to make a statement admitting possession of the cell phone. (Id.). Based on the severity of the charge, the UDC referred the Code 108 violation to the DHO for a hearing. (Id.). Petitioner received written notice of the hearing before the DHO as well as his rights at the hearing. (Id.). Petitioner waived his right to a staff representative at the DHO hearing. (Id.). A hearing was held before the DHO on November 11, 2014. (Id.). Petitioner was present and again advised of his rights which he stated he understood. (Id.). Petitioner waived his right to a staff representative and his right to have witnesses. (Id.). During the DHO hearing, Petitioner stated "I admit to having the cell phone. I come out from pod A-pod, but I live in C-pod." (Id.). Petitioner further stated that the phone did not belong to him but he went "to get the phone for someone because he hurt his leg, I was not going to use it. I was cleaning my room." (Id.). Based on the evidence, the DHO found that the "greater weight" showed that Petitioner committed the prohibited act of Possession of a Hazardous Tool in violation of Code 108.(Id.). The DHO based her decision on the facts presented in the body of the Incident Report, the reporting officer's statement, Petitioner's admission to possession of the cell phone, and supporting documentation. (Id.). The DHO imposed sanctions including disallowance of 41 days of GCT, 30 days of disciplinary segregation, 60 days loss of phone privileges, and 60 days loss

of commissary privileges. (Id.). On or about November 20, 2014, the DHO prepared a written report detailing her decision, the evidence relied upon, and the reasons for the sanctions imposed. (Id.). Since the MCF is a contract facility, the DHO report had to be reviewed by the BOP and certified prior to delivery to Petitioner. (Id.). The DHO report was sent to the BOP on November 20, 2014, and returned for corrections on several occasions. (Id.). The delay in completing Petitioner's DHO report was due to the administrative review process between the BOP and MCF. (Id.). On January 14, 2015, a DHO Checklist was completed for Incident Report #2623603 verifying that BOP Policy and Procedure Compliance was followed during Petitioner's disciplinary process. (Id.).

As to Petitioner's claims that he was required to remain in the SHU at MCF beyond the time limit he was sanctioned and another 43 days when he was transferred to USP Atlanta due to the delayed receipt of the DHO report, Kirkley declares the claims are without merit. (Id.). Petitioner remained housed in the SHU following his DHO hearing pursuant to Program Statement 5270.10, Chapter 4. (Id.). Petitioner was found to have violated Inmate Disciplinary Code 108, which is classified under the Greatest Severity Level of Prohibited Acts in the Inmate Disciplinary Code. (Id.). Petitioner served thirty days of Disciplinary Segregation in the SHU from November 12, 2014, until December 11, 2014. (Id.). Petitioner remained in administrative detention in the SHU after finishing Disciplinary Segregation because the severity of his inmate discipline offense increased his custody classification to a higher security level and he could not be released back to the general population at MCF. (Id.). Therefore, MCF requested that Petitioner be transferred to a greater security level

facility. (Id.). On January 29, 2015, Petitioner was transferred from MCF (a low security facility) to USP Atlanta (A medium security holdover facility), where he remained until space became available at his current institution, FCI Estill (a medium security facility), on March 10, 2015. (Id.). Any additional time Petitioner spent in SHU was due to the change in his security classification, not the alleged delay in preparing his DHO report. (Id.).

## ANALYSIS

The Supreme Court held that inmates are entitled to limited due process rights in prison disciplinary proceedings to the extent that a protected liberty interest is affected. Inmates have a protected liberty interest in the accumulation of good time credits. See Wolff v. McDonnell, 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Therefore, in prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. Id. These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. Wolff, 418 U.S. at 564-571. Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, Petitioner has not shown a violation of due process under Wolff, supra. Even though Petitioner alleges his loss of GCT should be expunged since he did not receive the

9

ADO within twenty-four hours and did not receive the DHO report within 15 working days after the DHO hearing, Petitioner received the ADO[3]; Petitioner received a copy of the incident report on October 7, 2014, which advised Petitioner of the charges[4] (Respondent's Exhibit #4); Petitioner was given notice on October 14, 2014, of a disciplinary hearing before the DHO more than twenty-four hours prior to the DHO hearing held on November 11, 2014 (Exhibit #6); and, Petitioner was given a notice of his rights at the Discipline Hearing (Doc. #11-7) including, but not limited to, his rights to a staff representative and to have witnesses present. Id. Petitioner declined both. (Doc. #11-6). Petitioner admitted to a violation of Code 108 when he stated that he had the cell phone on his person even though he asserted that the

---

[3] Petitioner argues in response that he did not receive the ADO until September 2, 2014, and referred to a copy of the ADO order attached to his petition. A review of this ADO order reveals that Petitioner received a copy of this order on August 31, 2014. However, Petitioner asserts that on the back of the order is the date of September 2, 2014. A review of this order submitted by the Petitioner reveals the handwritten note "Issued on 9-2" with a signature that is not legible. However, Petitioner filed a grievance in this regard. On October 6, 2014, the Assistant Warden responded to the grievance finding that there was no documentation or proof to substantiate his claim that he received the ADO late as the date of August 31, 2014, was written on the ADO. On October 29, 2014, the Warden responded to the grievance concluding that while Petitioner stated that he received the ADO on September 2, 2014, and not August 31, 2014, as written on the Order, he did not provide any evidence that shows he received the document in an untimely manner. Therefore, the appeal was denied. Regardless, Petitioner received a copy of the report. Although Petitioner asserts that he did not receive the ADO order in a timely manner pursuant to BOP regulations, violations of BOP regulations do not equate to a violation of due process. See Irvin, supra.

[4] Additionally, even though the date of the incident was August 31, 2014, the Incident Report was not delivered until October 7, 2014. Petitioner received notification of Advisement of Unit Discipline Committee (UDC) delays stating that his UDC hearing was suspended on August 31, 2014, beyond the five working days, pending the possible outside prosecution, and released by the SIS Department on October 7, 2014, for internal processing. (Respondent's exhibit #9).

phone did not belong to him. (Exhibits #8 and #10).[5] Petitioner received the DHO order outlining the evidence, the sanction, and the reason for the sanction. (Exhibit#8). Although Petitioner asserts that he did not receive the ADO and DHO orders in a timely manner pursuant to BOP regulations, violations of BOP regulations do not equate to a violation of due process. See Irvin v. Federal Bureau of Prisons, supra, (citing Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa.1992) ("The Constitution does not require strict adherence to administrative regulations and guidelines.")); Burnside v. Bragg, 2015 WL 1021135 (D.S.C. March 9, 2015) (citing Flanagan, supra). Rather, Petitioner must show prejudice resulted from an alleged constitutional violation as a prerequisite to be entitled to relief. Id. Petitioner has failed to show prejudice in this case. Petitioner was able to exhaust his administrative remedies and has not shown he suffered any prejudice by the delay in his receipt of the DHO written report.[6] The Constitution only requires compliance with minimal federal due process

---

[5] In an institutional setting, the fact-finder need only show that some evidence existed to support the decision. See Irvin v. Federal Bureau of Prisons, 2009 WL 1811245 (D.S.C.2009) (citing Superintendent, Massachusetts Correction Institution v. Hill, 472 U.S. 445-456-457, 105 S.Ct. 2768, 86 L.Ed. 2d 356 (1985)). In the instant action, Petitioner admitted that he had a cell phone on his person.

[6] Petitioner alleges that due to the delay in receiving the DHO report, his transfer to the BOP was delayed by delaying his transfer to the USP Atlanta before being transferred to FCI, Estill. However, Petitioner was not released back into the general population at MCF after completing his Disciplinary Segregation because his security classification had increased to a higher level due to the offense not due to the delay in receiving the written report. Due to the increase security classification, Petitioner was transferred on January 29, 2015, from MCF to USP Atlanta, a medium security holdover facility, until being transferred to FCI Estill on March 10, 2015. (See Inmate History Quarters, Respondent's Exhibit #2 and Exhibit #5). Program Statement 5270.10, Chapter 4, Administrative Detention Status states, in relevant part, that inmates may be placed in administrative detention status for ". . . (b) Holdover Status. You are in holdover status during transfer to a designated institution or other destination." (See Respondent's Exhibit #11; 28 C.F.R. 541.23(b)) In his response in opposition to summary judgment, Petitioner argues that his delay in

11

standards. Id. The Supreme Court in Wolff did not set any specific time limit for the reporting of the hearing. See Wolff v. McDonnell, 418 U.S. at 563-576 (noting that due process requirements are satisfied where a prisoner is given advance written notice of the charges, the right to participate in the hearing and call witnesses, and provided with a written statement setting out the decision and the reasons therefore). Additionally, the Regulations, as set forth above, state the time limits that the reports are "ordinarily" provided but not mandatory.[7] Therefore, Petitioner has not shown that receiving his written copy of the report outside the normal fifteen day notice period violated his due process rights. In conclusion, there is no evidence of a due process violation in this action as Petitioner received all of the

---

being sent to FCI Estill was caused by the delay in receiving the DHO report not due to a lack of space as asserted by the Respondent. Specifically, Petitioner asserts that he should have been transferred out of MCF either before Christmas or early January, not on January 29, 2015. Because of the delay in receiving the DHO report, Petitioner asserts he had to remain in USP Atlanta before being transferred to FCI Estill because "Petitioner's DHO report delay caused his transfer delay, it caused the failure of Petitioner's TB shot not to be updated. Petitioner received his TB shot at Atlanta hold over and missed the first bus to Estill (every two weeks has a bus to Estill from Atlanta)." (Doc. # 14, p. 6). Petitioner responds that the "SHU is not the most comfortable place to be housed,. . ." and that it his contention that the "main reason of my DHO report delay was DHO officer L. Harris' prejudice, and not because of so-called administrative reasons."(Id.). Regardless, Petitioner has failed to show prejudice in this case. No liberty interest is created in custodial classifications. Meachum v. Fano, 427 U.S. 215, 225 (1976).

[7] Although BOP policy states that when placed in administrative detention status the inmate will receive a copy of the administrative detention order, it specifically states that ". . . you will receive a copy of the administrative detention order, *ordinarily* within 24 hours, detailing the reason(s) for your placement. . ." See 28 C.F.R. § 541.25. Additionally, under the Inmate Discipline Program with regard to Petitioner's allegations, it states that "[t]he DHO gives the inmate a written copy of the decisions and disposition, *ordinarily* within 15 work days of the decision." See 28 C.F.R. § 541.2(h) Therefore, the plain language of the provisions on which Petitioner relies, indicates that the time limits are not mandatory and has been so found by the courts. See Carr v. Lamanna, 2007 WL 2428537 (D.S.C. 2007) *citing* Saenz-Lopez v. Bureau of Prisons, 221 F.3d 1339 (7th Cir. 2000)(BOP has discretion to depart from time frames in 28 C.F.R. for good cause); Sanders v. Edgefield, 2006 WL 4279486 (D.S.C. 2008).

due process safeguards delineated in Wolff. Accordingly, it is recommended that Respondent's motion for summary judgment be granted and the petition dismissed.

## CONCLUSION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (doc. #11) be GRANTED and Petitioner's petition for Writ of Habeas Corpus be denied, and this petition dismissed. It is further recommended that any outstanding motions be deemed moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 25, 2016
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**